**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| WILLIAM MATTHEW FAILES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-13-638-HE |
| | ) | |
| GARFIELD COUNTY BOARD OF | ) | |
| COUNTY COMMISSIONERS; and | ) | |
| JERRY NILES, Garfield County Sheriff, | ) | |
| | ) | |
| Defendants.[1] | ) | |

## REPORT AND RECOMMENDATION

Plaintiff William Matthew Failes, a state prisoner appearing pro se and proceeding *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his federal constitutional rights during his incarceration at the Garfield County Detention Facility ("GCDF") in Enid, Oklahoma. United States District Judge Joe Heaton has referred this matter to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636. Having reviewed Plaintiff's Second Amended Complaint (Doc. No. 39), the undersigned recommends that Plaintiff's action be dismissed for failure to state a claim upon which relief may be granted.

---

[1] In the caption of Plaintiff's Second Amended Complaint (Doc. No. 39), Plaintiff identified the defendants as "Garfield County, et al." As set forth below, the undersigned has construed the Second Amended Complaint as asserting claims against the Garfield County Board of County Commissioners and Garfield County Sheriff Jerry Niles. Accordingly, the caption, or "style," of the case hereby is amended to reflect that construction.

BACKGROUND

On October 31, 2013, the undersigned entered a Report and Recommendation recommending that Mr. Failes' Complaint and First Amended Complaint (Doc. Nos. 1, 9) be dismissed for failure to state a claim upon which relief may be granted, but that Mr. Failes be granted leave to file a second amended complaint to correct identified deficiencies. Report & Recommendation, Doc. No. 31, at 1, 12. Rather than filing an objection to the October 31st Report and Recommendation, Mr. Failes filed a Second Amended Complaint (Doc. No. 39). The district judge, finding that Mr. Failes had "essentially confessed the Report and Recommendation," again referred the matter to the undersigned. Order, Doc. No. 40. Thus, Mr. Failes' Complaint and First Amended Complaint are considered dismissed, and, technically, only the allegations of the Second Amended Complaint are currently before the Court. "[A]n amended complaint ordinarily supersedes the original and renders it of no legal effect." *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991) (internal quotation marks omitted).

Mr. Failes was advised in the undersigned's October 31st Report and Recommendation that if any second amended complaint were filed, the pleading "w[ould] be subject to the same screening process [by the Court] as his Complaint and Amended Complaint, and that *any amended complaint should include all claims, as it will supersede or replace any prior or dismissed complaints*." Report & Recommendation at 12 (emphasis added). In reviewing Mr. Failes' Second Amended Complaint, it appears that he omitted some aspects of claims or certain supporting factual

allegations he previously had asserted.[2]  Nevertheless, in light of the liberal construction owed to these pleadings and to more efficiently assess whether Mr. Failes may be able to cure the deficiencies of the Second Amended Complaint, the undersigned has reviewed the factual allegations made in all three pleadings to date.

## A. *Defendants*

In his Complaint and First Amended Complaint, Mr. Failes named GCDF and Garfield County Sheriff Jerry Niles as defendants.  Compl., Doc. No. 1, at 1-2; First Am. Compl., Doc. No. 9, at 1-2.  However, as noted in the October 31st Report and Recommendation, GCDF has no separate legal identity from that of Garfield County and, thus, is not a suable entity under Oklahoma law.  Report & Recommendation at 7-8.  The undersigned recommended dismissal of GCDF as a defendant on that basis.  *Id.* at 8, 12. The undersigned also explained that any claim under § 1983 must include factual allegations to plausibly establish a causal connection between *each* defendant and an alleged violation of federal rights.  *Id.* at 6.  The undersigned recommended dismissal of Sheriff Niles on the basis that Mr. Failes had not established the requisite causal connection.  *See id.* at 9-11, 12.

_____

[2] In his Complaint, Mr. Failes alleged that he had been "put off concerning the opportunity to see a state accredited [doctor] for [his] mental illness during <u>ALL</u> [his] incarceration."  Compl. at 2; *see also id.* at 5 (suggesting psychiatric care may have been available through an ODOC "host facility").  In his First Amended Complaint, he similarly alleged that GCDF had "neglected to provide <u>ANY</u> certified mental health care," asserting that he had been advised in response to his "sick calls" that GCDF did not employ a psychiatrist.  *See* First Am. Compl. at 3, 2 (capitalization altered); *see also* Report & Recommendation at 8 n.5 (noting that Mr. Failes did not specify to whom he submitted "sick calls" or who provided responses).  These allegations do not appear in the Second Amended Complaint.

In his Second Amended Complaint, Mr. Failes expressly names only the Garfield County Board of County Commissioners ("the Board of County Commissioners" or "the Board") as a defendant, stating, "Under Oklahoma law, a county is sued through its board of commissioners." *See* Second Am. Compl. at 2, ¶ 5 (citing Okla. Stat. tit. 19, §§ 1, 3-4). Thus, Mr. Failes appears to have substituted the Board of County Commissioners as a defendant in place of GCDF.

Mr. Failes also alleges that "[t]he sheriff acting in his official capacity disregarded substantial risk at [GCDF] and should be liable under § 1983, *Bivens*," indicating that he intended to again name Sheriff Niles as a defendant. *See id.* at 3, ¶ 12. Mr. Failes does not, however, include Sheriff Niles as a defendant in the caption of his Second Amended Complaint; nor does he otherwise list Sheriff Niles as a party. *See id.* at 1, 2; *see also* Fed. R. Civ. P. 10(a) (requiring plaintiff to name *all* parties in the title of the complaint); *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (requiring all parties, including pro se litigants, to adhere to applicable procedural rules). Nevertheless, the undersigned addresses Mr. Failes' claims against Sheriff Niles in this Report and Recommendation. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991) (stating rule of liberal construction "applies to all proceedings involving a pro se litigant"); *see also* Fed. R. Civ. P. 8(e) (requiring pleadings to "be construed so as to do justice").

## B. *Allegations of Deficient Medical Treatment at GCDF*

Mr. Failes' claims are based on allegedly deficient medical treatment at GCDF. Mr. Failes states that he entered GCDF as a pretrial detainee on March 1, 2013, and was convicted on March 8, 2013. Second Am. Compl. at 2, ¶ 4. He states: "Upon

information and belief Garfield County were educated and informed on plaintiff's mental condition and illness, medications and certified Dr.'s order on how to provide care for plaintiff upon admission [to GCDF] per treatment plan courtesy [of the] Oklahoma Department of Mental Health [and Substance] Abuse Services." *Id.* at 2, ¶ 8. Mr. Failes also states that "upon admission to [GCDF, he] described [his] mental health illness history and provided medication and treatment courtesy [of the] Oklahoma Department of Mental Health and Substance Abuse Services." *Id.* at 4-5, ¶ 15. Mr. Failes does not further describe his preexisting condition in this version of his complaint.[3]

Mr. Failes states that he began to experience difficulties with medical care on March 22, 2013, when "[GCDF] failed to refill [his] medication" for three days. *See id.* at 3, ¶¶ 9-10, 5, ¶ 15. Mr. Failes alleges that he "filed administrative grievances and appeals on March 22[,] 2013[,] about inadequate medical care." *Id.* at 3, ¶ 11. Mr. Failes further alleges that: (1) "[d]uring the three days [he] went without his prescribed medication[, he suffered] much duress"; (2) his "fear of possibly going into seizures elevated his blood pressure, caused headaches, [and] uncontrollable anxiety"; and (3) he "slept on the hard concrete floor three consecutive nights because being assigned [to the]

---

[3] In his original Complaint, Mr. Failes stated that he had been a patient at the Northwestern Center for Behavioral Health since 2005 and had been hospitalized as recently as December 7, 2012, for mental illness. *See* Compl. at 4. In his First Amended Complaint, Mr. Failes stated that he was diagnosed with bipolar disorder in 2005. First Am. Compl. at 3. Mr. Failes also referred to depression and schizophrenia, although whether he had ever been diagnosed with these conditions was not clear. *See id.*

top bunk with [a] chance of going into seizures would result in falling off and out of [the] bunk[,] resulting in more physical harm." *Id.* at 3, ¶ 10.[4]

Mr. Failes then discusses his alleged attempts, months later, to notify certain individuals of his difficulties. Mr. Failes states that he "wrote [to] Garfield County [S]heriff, Jerry Niles, on 6-13, providing a detailed account of mental condition, neglect of medication, neglect of psychiatric care and plaintiff due to delayed care was caused substantial physical harm and side effects." Second Am. Compl. at 3, ¶ 12. Mr. Failes does not further describe this "detailed account" or his "substantial physical harm and side effects," as relayed to Sheriff Niles.[5] Mr. Failes alleges, "The sheriff failed to act except a two sentence reply in the form of a letter telling plaintiff 'to have patience.'" *Id.*

Mr. Failes also alleges that

> during [the] summer of 2013[, he] corresponded on several occasions with Genese McCoy, medical administrator for the Oklahoma Department of Corrections. Plaintiff sent grievances concerning this as per [GCDF] inmate handbook Rule 5 under inmate medical rights, "mental health services will be provided regardless to having sufficient money in inmate

---

[4] Mr. Failes does not explain why seizures were a particular concern.

[5] In his Complaint, Mr. Failes similarly referenced unspecified "side effects." *See* Compl. at 5, 7. In his First Amended Complaint, he alleged that Defendants' actions caused him to experience "mental anguish from depression to racing thoughts to sc[h]izophrenia to physical side effects." *See* First Am. Compl. at 3; *see also id.* at 5 (referencing "physical and mental side effects"). In his Complaint and First Amended Complaint, Mr. Failes alleged that he had corresponded with Sheriff Niles but provided scant details of this correspondence. *See* Compl. at 5; First Am. Compl. at 5. In the October 31st Report and Recommendation, Mr. Failes was advised that, among other things, he had "provided too few facts regarding Sheriff Niles' knowledge that there was a substantial risk of serious harm to Mr. Failes or that Sheriff Niles improperly acted or failed to act despite such knowledge." Report & Recommendation at 9.

account. These services are obtained in the same manner as the medical and dental services."

*Id.* at 4, ¶ 13; *see also* Second Am. Compl. Ex. 1, Doc. No. 39-1, at 4 (providing apparent copy of excerpt from GCDF inmate handbook).[6] Mr. Failes alleges that Ms. McCoy "sent all correspondences to [GCDF] for review and/or action[,] stating 'until you are transferred to the [Department of Corrections'] assessment and reception center[,] [t]he jail is responsible for ensuring that you have access to health services.'" Second Am. Compl. at 4, ¶ 13.

In his Second Amended Complaint, Mr. Failes also attempts to supplement his claims by including factual allegations from events occurring in September and October 2013, i.e., after the filing of his Complaint and First Amended Complaint in June and July 2013, respectively. *See id.* at 4, ¶ 14, 5, ¶ 17. Specifically, Mr. Failes alleges that "concerning [his] side effects complaints, [he] was finally seen in the clinic [on] September 30[], 2013, approx. 180 days after the first request, and was prescribed by certified doctor, medication for hypertension." *Id.* at 4, ¶ 14.

He further states that he "filed grievances [on] September 28, 2013[,] and October 2, 2013, against [GCDF] for failing to provide medication for hypertension." *Id.* at 5, ¶ 17. Two Grievance Report Forms are referenced in and part of the Second Amended Complaint.[7] *See* Second Am. Compl. Ex. 1 at 1-2; Second Am. Compl. at 5, ¶ 17; Fed.

---

[6] In the excerpt above, Mr. Failes states that he "sent grievances concerning this." Even in full context, it is not clear what is meant by "this."

[7] On Mr. Failes' September 28th Grievance Report Form, submitted prior to his clinic visit resulting in a prescription on September 30th, Mr. Failes complains of "not feeling

R. Civ. P. 10(c); *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (noting that a court may consider attached exhibits in assessing a pleading's sufficiency). Responses on the Grievance Report Forms, which are signed by "V. Gay," indicate that the new prescription was ordered from "the DOC pharmacy" on the day it was prescribed – September 30, 2013 – and that Mr. Failes received the medication a few days later. *See* Second Am. Compl. Ex. 1 at 1-2. Mr. Failes identifies no harmful effects from the alleged delay in receiving this medication.

### C. Legal Claims

Mr. Failes contends that his factual allegations establish that "Garfield County et al." violated his right under the United States Constitution's Eighth Amendment to be free from cruel and unusual punishment, as well as violated state law. *See* Second Am. Compl. at 6, ¶ 18.[8] Specifically, Mr. Failes contends that "Garfield County deprived the plaintiff of health care and neglected to act upon the [Oklahoma Department of Mental Health and Substance Abuse Services'] treatment plan, sick calls, grievances[,] and appeals of plaintiff." *Id.* (Count I). Mr. Failes further contends that "Defendant Garfield

_____

well," further asserting that he "spent Friday Sept 27, in the nurse station" where "they took [his] blood pressure 5 different times cause of how HIGH it was." Second Am. Compl. Ex. 1 at 1. He alleges that he "was administered medication to be t[a]ken for [his] health & safety reasons" but that "Friday [e]vening during med pass" he did not receive any blood pressure medication despite "continu[ing] to feel terrible." *Id.* The form asked Mr. Failes to state the action he believed would resolve the problem, and he stated, "[L]et the United States District Court handle it." *Id.*

[8] Mr. Failes cites Oklahoma statutes, indicating that he is attempting to bring state-law claims in addition to his federal claims. *See* Second Am. Compl. at 6, ¶ 18 (citing Okla. Stat. tit. 19, §§ 1, 4 and Okla. Stat. tit. 57, § 52); *see also id.* at 1, ¶ 2 (citing 28 U.S.C. § 1367 as basis for Court's jurisdiction over state-law claims).

County et al., fail[ed] to intervene in the ongoing neglect and to provide quality health care." *Id.* (Count II). For these alleged violations, Mr. Failes seeks an unspecified amount of nominal, compensatory, and punitive damages, as well as declaratory relief. *Id.* at 6-7.

## ANALYSIS

### A. *The Court's Screening Obligation*

The Court must review each complaint brought by a prisoner (1) with respect to prison conditions; (2) seeking redress against a governmental entity, officer, or employee; or (3) who is proceeding *in forma pauperis*. *See* 42 U.S.C. § 1997e(c)(1); 28 U.S.C. §§ 1915A(a), 1915(e)(2)(B). In such circumstances, the Court is required to dismiss a complaint or any portion of a complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 42 U.S.C. § 1997e(c)(1); 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

### B. *Stating a Plausible Claim to Relief Pursuant to 42 U.S.C. § 1983*

Although the Court construes a pro se litigant's pleadings liberally, no litigant is exempt from compliance with applicable procedural rules. *See Kay*, 500 F.3d at 1218. To state a claim upon which relief may be granted, procedural rules require a plaintiff's complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint fails to state such a claim when it lacks factual allegations

sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citation and footnote omitted). Bare legal conclusions in a complaint are not assumed to be true; legal conclusions "must be supported by factual allegations" to state a claim upon which relief may be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall*, 935 F.2d at 1110; *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (noting that although courts construe pro se pleadings liberally, courts "will not supply additional factual allegations to round out a plaintiff's complaint"). Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Gee*, 627 F.3d at 1184-85 (discussing *Iqbal*); *Kay*, 500 F.3d at 1218 (indicating court uses same analysis for complaint's sufficiency whether performed sua sponte or pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)).

1. <u>42 U.S.C. § 1983</u>

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege sufficient facts to plausibly show *both*: (1) a violation of a right secured by the Constitution or laws of the United States, and (2) that the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). It is not sufficient to establish only that a federal right was violated. The plaintiff must allege facts to plausibly establish a causal

connection between an alleged violation of a federal right and *each* defendant. *See Iqbal*, 556 U.S. at 676; *Pahls v. Thomas*, 718 F.3d 1210, 1225, 1226, 1228 (10th Cir. 2013). A defendant cannot be vicariously liable under § 1983 for the acts of another; each defendant must be sufficiently connected to the violation, as detailed below. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768, 769 (10th Cir. 2013).

a. Municipal Liability

If a defendant is sued in his or her official capacity, the suit generally is treated as one against the governmental entity that the official represents. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Here, as detailed below, the entity is a county, thereby implicating municipal liability. To establish municipal liability under § 1983, a plaintiff must first identify an official policy or custom of the municipality, whether enacted or maintained by its legislative body or an authorized decisionmaker. *Schneider*, 717 F.3d at 769-70. "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Id.* at 770.

After identifying such an official policy or custom, the plaintiff must then allege facts to establish that the policy or custom either (1) directly violated a federal right of the plaintiff, or (2) was the "moving force" behind a county employee's violation of a federal

right of the plaintiff.[9]  *Id.*  Finally, a plaintiff must allege facts "to show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury."  *Id.* at 769, 770-71.  Thus, for each claim of municipal liability, the plaintiff must establish three elements: (1) official policy or custom, (2) causation, and (3) state of mind.  *Id.* at 769.

   b.  Individual Liability

If a defendant is sued in his or her individual capacity under § 1983, the plaintiff must allege facts to establish the defendant's "personal involvement or participation" in the violation of federal rights.  *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996); *see also Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976).

A supervisor may not be held vicariously liable under § 1983 for the misconduct of a subordinate: "his or her title notwithstanding, [a supervisor] is only liable for his or her own misconduct."  *Iqbal*, 556 U.S. at 676.  To establish the liability of a supervisor

---

[9] Because a municipality cannot be vicariously liable under § 1983 for the acts of an employee, "rigorous standards of culpability and causation must be applied" when "a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so."  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1997).  For instance, if a plaintiff alleges a municipality is liable under § 1983 based on deliberately indifferent training, the plaintiff must allege facts to establish that

> the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need.  In that event, the failure to provide proper training may fairly be said to represent a policy for which the [municipality] is responsible, and for which the [municipality] may be held liable if it actually causes injury.

*City of Canton v. Harris*, 489 U.S. 378, 390 (1989) (footnote omitted).

under § 1983, a plaintiff must allege facts to establish three elements: (1) personal involvement, (2) causation, and (3) state of mind. *Schneider*, 717 F.3d at 767; *see also Dodds v. Richardson*, 614 F.3d 1185, 1199 n.8 (10th Cir. 2010) (noting that elements may overlap).

To establish a supervisor's personal involvement, a plaintiff must allege facts to establish that the supervisor's own individual actions violated a federal right of the plaintiff; mere knowledge of a subordinate's misconduct is not sufficient. *See Iqbal*, 556 U.S. at 676-77. Personal involvement by a supervisor is not limited to direct participation in a violation of a federal right. Such involvement may also be established through proof of the supervisor's promulgation, creation, implementation, or responsibility for the continuation of a policy that resulted in the violation. *Pahls*, 718 F.3d at 1225,1226 (requiring plaintiff to "identify the specific polic[y] over which particular [supervisor] possessed responsibility and that led to the alleged constitutional violation"); *see also Dodds*, 614 F.3d at 1197-99 (discussing *Iqbal*'s articulation of higher standard for supervisor's personal involvement to ensure preclusion of vicarious liability); *Schneider*, 717 F.3d at 768 (noting precise contours of higher standard not yet defined post-*Iqbal*).

To establish causation – i.e., that a supervisor caused a violation of the plaintiff's federal rights, the plaintiff must allege facts to establish that a subordinate violated the plaintiff's federal rights and that the supervisor "set in motion a series of events that [he or she] knew or should have known would cause" such a violation. *See Schneider*, 717 F.3d at 768 (internal quotation marks omitted); *Dodds*, 614 F.3d at 1195-96, 1198.

Finally, the plaintiff must allege facts to establish that the defendant acted with the requisite state of mind, which depends on the type of violation alleged. *Schneider*, 717 F.3d at 769. As discussed below, the state of mind required for the Eighth Amendment violations alleged by Mr. Failes is deliberate indifference. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *see also Farmer v. Brennan*, 511 U.S. 825, 838-40, 42 (1994). To establish the deliberate indifference of a supervisor, the plaintiff must allege facts to show that the defendant acted or failed to act despite knowledge of a substantial risk that such conduct would result in an Eighth Amendment violation. *See Schneider*, 717 F.3d at 769.

2. The Eighth Amendment

As interpreted, the Eighth Amendment prohibits subjecting prisoners to the "unnecessary and wanton infliction of pain," which includes exhibiting "deliberate indifference to [their] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted). As discussed below, establishing an Eighth Amendment violation based on deliberate indifference to a serious medical need involves an objective component and a subjective component, and, to avoid dismissal of the claim, facts must be alleged to establish *each* component.

To meet the objective component, a plaintiff must allege facts to establish that the deprivation of rights was related to a serious medical need, i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (internal quotation marks omitted). A "[d]elay in medical care only constitutes an Eighth Amendment violation where the

plaintiff can show that the delay resulted in substantial harm," which may include prolonged and substantial pain and suffering. *See id.* at 1210 (noting further that "not every twinge of pain suffered as the result of delay in medical care is actionable").

To meet the subjective component of deliberate indifference, a plaintiff must allege facts to establish that the defendant "acted or failed to act despite his [or her] knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. A defendant's negligence in diagnosing or treating a medical condition is alone insufficient to establish deliberate indifference. *See id.* at 835-40. The plaintiff must allege facts to establish that the defendant "consciously disregarded a substantial risk of serious harm." *Id.* at 838-40; *see also Daniels v. Williams*, 474 U.S. 327, 330 (1986) (reiterating that although § 1983 contains no separate state-of-mind requirement, plaintiff must establish state-of-mind requirement necessary for underlying constitutional violation).

*C. Whether Mr. Failes Has Stated a Plausible Claim to Relief Pursuant to § 1983*

As noted, Mr. Failes alleges various violations of his Eighth Amendment right to be free from cruel and unusual punishment, and each violation alleged in his Second Amended Complaint involves an alleged delay in care. To state a claim upon which relief may be granted, Mr. Failes' factual allegations for each claim must satisfy the above criteria for an Eighth Amendment violation brought pursuant to § 1983 as to each Defendant. As a preliminary matter, the undersigned addresses (1) Mr. Failes' allegations pertaining to state-law violations and (2) whether Mr. Failes' claims are raised against Defendants in their official capacities, individual capacities, or both.

In his Second Amended Complaint, Mr. Failes alleges violations of state law. *See* Second Am. Compl. at 1, ¶ 2, 6, ¶ 18. Such violations alone do not meet the criteria for a claim pursuant to § 1983, which, as noted, requires a violation of a *federal* right. *See Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002). Only the alleged violations of federal rights are considered in assessing the sufficiency of Mr. Failes' Second Amended Complaint brought under § 1983.[10]

Also, in his Second Amended Complaint, Mr. Failes does not expressly state that he is suing the Board of County Commissioners in their official capacities. However, based on his repeated references to suing the County and his lack of any factual allegations pertaining to the personal involvement of individual Commissioners, whether directly or as a supervisor, it appears that Mr. Failes' claims against the Board are official-capacity claims only. *See Houston v. Reich*, 932 F.2d 883, 885 (10th Cir. 1991) (instructing that, when not clearly indicated on complaint, court may determine capacity in which defendant is sued by reviewing course of proceedings). Accordingly, the

---

[10] The undersigned ultimately concludes that Mr. Failes has failed to state a claim upon which relief may be granted under § 1983 and recommends dismissal. Nevertheless, the undersigned now briefly addresses the Court's jurisdiction over any state-law claims asserted in the Second Amended Complaint. All parties appear to be citizens of the same state—Oklahoma. *See* Second Am. Compl. at 2; Compl. at 1-2. The state laws referenced by Mr. Failes in his Second Amended Complaint generally pertain to powers and duties of county officials in Oklahoma and raise no apparent federal question. Lacking diversity of citizenship or a federal question, the Court would not have original jurisdiction over such claims. *See* 28 U.S.C. §§ 1332, 1331. If the Court adopts the undersigned's recommendation that Mr. Failes' § 1983 claims be dismissed, any supplemental jurisdiction the Court may exercise over strictly state law claims is discretionary. *See* 28 U.S.C. § 1367(c)(3). The undersigned recommends that the Court decline to exercise such jurisdiction.

undersigned considers Mr. Failes' claims against the Board of County Commissioners as against the entity they represent – Garfield County.  *See Kentucky*, 473 U.S. at 166.

Mr. Failes states that Sheriff Niles should be liable in his official capacity.  *See* Second Am. Compl. at 3, ¶ 12.  Claims against Sheriff Niles in his official capacity are treated as claims against the entity he represents, which is also Garfield County.  *See Lopez v. LeMaster*, 172 F.3d 756, 762-63 (10th Cir. 1999) (equating suit against sheriff in official capacity with suit against county); *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (same); *see also Kentucky*, 473 U.S. at 167 n.14. Despite Mr. Failes' express statement that Sheriff Niles should be liable in his official capacity, it is unclear from Mr. Failes' factual allegations whether he is also suing Sheriff Niles in his individual capacity.  Thus, the undersigned addresses this possibility in the analysis that follows.

1. Mr. Failes' Claims Regarding a Refill of Prescription Medication

The undersigned first considers Mr. Failes' factual allegations that on March 22, 2013, "[GCDF] failed to refill [his] medication" for three days, causing Mr. Failes "much duress" because "a fear of possibly going into seizures elevated his blood pressure, caused headaches, [and] uncontrollable anxiety," which led Mr. Failes to sleep on the floor of his cell.  *See* Second Am. Compl. at 3, ¶ 10.  Mr. Failes asserts that he "filed administrative grievances and appeals on March 22[,] 2013[,] about inadequate medical care."  *Id.* at 3, ¶ 11.

a. Municipal Liability

First, to establish municipal liability against Garfield County for this alleged Eighth Amendment violation, Mr. Failes must identify an official policy or custom fairly attributable to the County. Mr. Failes does not contend, nor can it reasonably be inferred from his factual allegations, that it is a formally promulgated policy or a well settled custom or practice for Garfield County – whether through the Board of County Commissioners or the Sheriff – to delay refilling a prisoner's prescription medications for a few days.[11] *See Schneider*, 717 F.3d at 770. In fact, with regards to prescription refills, any delay appears from Mr. Failes' allegations to have been a one-time occurrence for him. Similarly, Mr. Failes does not contend, nor can it be inferred, that a final decision by a municipal policymaker, whether the Board or the Sheriff, led to the alleged three-day delay in refilling his prescription. *See id.* Finally, Mr. Failes' sparse factual allegations are insufficient to suggest that either the Board or the Sheriff engaged in deliberately indifferent training or supervision of a municipal employee. *See id.*; *see also supra* note 9.

---

[11] In his Second Amended Complaint, Mr. Failes cites only one formally promulgated policy – a rule allegedly appearing in the inmate handbook for GCDF, stating: "Mental Health services will be provided regardless to having sufficient money in inmate account. These services are obtained in the same manner as the medical and dental services." Second Am. Compl. Ex. 1 at 4; Second Am. Compl. at 4, ¶ 13. Mr. Failes does not appear to contend that this policy is unconstitutional, nor does he explain how this policy was violated, or how, in turn, that would constitute a violation of his federal rights as required for a suit brought under § 1983. *See Gaines*, 292 F.3d at 1225 (noting alleged violations of prison regulations alone do not state cognizable claim under § 1983).

Thus, Mr. Failes has not alleged facts to establish the first element of municipal liability. Accordingly, the undersigned need not consider whether the remaining elements have been established, and the claim against Garfield County regarding a delay in the prescription refill should be dismissed for failure to state a claim upon which relief may be granted.

  b.  Individual Liability

To establish Sheriff Niles' liability in his individual capacity, Mr. Failes must first allege facts to establish Sheriff Niles' personal involvement or participation in the alleged violation of Mr. Failes' federal rights. Mr. Failes states that, on March 22, 2013, he "filed administrative grievances and appeals . . . about inadequate medical care," but he does not identify the individual to whom he submitted these documents or who, if anyone, reviewed or responded to them. *See* Second Am. Compl. at 3, ¶ 11. Mr. Failes alleges that he wrote to Sheriff Niles several months later, "providing a detailed account of . . . neglect of medication," among other things. *See id.* at 3, ¶ 12. These facts do not implicate Sheriff Niles at the time the delay occurred and, thus, do not establish that Sheriff Niles was a direct participant in this alleged violation of Mr. Failes' federal rights.

Sheriff Niles' direct participation is not required, however, if Mr. Failes instead alleges facts to establish Sheriff Niles' personal involvement as a supervisor through the Sheriff's promulgation, creation, implementation, or responsibility for the continuation of a policy. *See Pahls*, 718 F.3d at 1225. However, Mr. Failes identifies no such policy. Thus, Mr. Failes has not alleged or established Sheriff Niles' personal involvement either

individually or as a supervisor.  Accordingly, the prescription-refill claim against Sheriff Niles should be dismissed for failure to state a claim upon which relief may be granted.[12]

2.  <u>Mr. Failes' Claims Regarding "Side Effects"</u>

The undersigned next considers Mr. Failes' factual allegations that there was a delay of approximately 180 days from his first request to be seen in the clinic, regarding "side effects," and only after that delay was he prescribed medication for hypertension. *See* Second Am. Compl. at 4, ¶ 14.

a.  Municipal Liability

Again, to establish municipal liability against Garfield County for this alleged violation, Mr. Failes must first identify an official policy or custom fairly attributable to the County.  However, Mr. Failes' sparse factual allegations provide no information on what contributed to the delay, much less to connect the delay to an official custom or policy.  Thus, Mr. Failes has not established the first element of municipal liability. Accordingly, the undersigned need not consider whether the remaining elements have been established, and this claim against Garfield County should be dismissed for failure to state a claim upon which relief may be granted.

---

[12] Further, to establish Sheriff Niles' liability as a supervisor, Mr. Failes would need to establish, among other things, that Sheriff Niles caused a violation of Mr. Failes' federal rights, which requires Mr. Failes to first establish that a subordinate under the Sheriff's supervision actually violated Mr. Failes' federal rights.  However, Mr. Failes includes no specific information on any such subordinate's conduct.  In particular, for an Eighth Amendment claim, factual allegations to establish a subordinate's *deliberate indifference* to Mr. Failes' serious medical needs is required, which requires factual allegations to establish a subordinate's *conscious disregard* of a substantial risk of serious harm, as opposed to negligence.

b. Individual Liability

Again, to establish Sheriff Niles' liability in his individual capacity, Mr. Failes must first allege facts to establish Sheriff Niles' personal involvement or participation in the alleged violation of Mr. Failes' federal rights. Mr. Failes alleges that he submitted at least one "request" to see a doctor regarding his "side effects." *See* Second Am. Compl. at 4, ¶ 14. However, Mr. Failes does not state to whom this request was submitted or whose conduct, if anyone's, caused the alleged delay. *See id.* Mr. Failes also alleges that he wrote to Sheriff Niles, "providing a detailed account of mental condition, neglect of medication, neglect of psychiatric care and plaintiff due to delayed care was caused substantial physical harm and side effects." *Id.* at 3, ¶ 12. He further states that Sheriff Niles "failed to act except a two sentence reply in the form of a letter telling [Mr. Failes] 'to have patience.'" *Id.* These facts do not establish that the Sheriff had more than mere knowledge of a subordinate's misconduct, much less that he was a direct participant in any alleged violation of Mr. Failes' federal rights through a delay in medical care. *See Iqbal*, 556 U.S. at 676, 677.

Sheriff Niles' direct participation is not required, however, if Mr. Failes instead alleges facts to establish Sheriff Niles' personal involvement as a supervisor through his promulgation, creation, implementation, or responsibility for the continuation of a policy. *See Pahls*, 718 F.3d at 1225. However, again, Mr. Failes identifies no such policy. Even if a policy of the Sheriff, as supervisor, to delay care could be established, Mr. Failes would still need to establish, among other things, that Sheriff Niles' policy caused a violation of Mr. Failes' federal rights, which would require Mr. Failes to first allege facts

to establish that a subordinate under the Sheriff's supervision violated Mr. Failes' federal rights. However, Mr. Failes includes no specific information on any such subordinate's conduct. As noted, Mr. Failes' sparse factual allegations provide no information on the events or the conduct of any individuals between Mr. Failes' alleged first request to visit the clinic regarding side effects and the intervening 180 days.

Thus, Mr. Failes has not alleged sufficient facts to establish Sheriff Niles' individual liability either personally or as a supervisor. Accordingly, this "side effects" claim against Sheriff Niles should be dismissed for failure to state a claim upon which relief may be granted.

3.  Mr. Failes' Claims Regarding Blood Pressure Medication

The undersigned next considers Mr. Failes' factual allegations that he "filed grievances [on] September 28, 2013[,] and October 2, 2013, against [GCDF] for failing to provide medication for hypertension." Second Am. Compl. at 5, ¶ 17. According to responses signed by "V. Gay" on Mr. Failes' Grievance Report Forms, Mr. Failes' new prescription was ordered from "the DOC pharmacy" on September 30, 2013 – the day on which he was seen in the clinic and the medication was prescribed – and Mr. Failes received the medication on October 2, 2013. *See* Second Am. Compl. Ex. 1 at 1-2; *see also* Second Am. Compl. at 4, ¶ 14. Mr. Failes identifies no harm suffered from the delay in receiving this medication.

a.  Municipal Liability

Even assuming that the procedure for obtaining a new prescription medication from "the DOC pharmacy" could be considered an official policy or custom fairly

attributable to the County, Mr. Failes has not alleged facts to establish the remaining elements for municipal liability – causation and state of mind. For instance, Mr. Failes has not alleged facts to establish that an Eighth Amendment violation occurred, much less a violation that was caused by an official policy or custom fairly attributable to the County. A "[d]elay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm," which may include prolonged pain and suffering when substantial. *Sealock*, 218 F.3d at 1210. Mr. Failes, however, identifies no harm, much less the requisite substantial harm, that resulted from the alleged delay in receiving his new medication. Further, again assuming this procedure could be considered an official policy or custom fairly attributable to the County, Mr. Failes provides no facts to suggest that the policy "was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider*, 717 F.3d at 769, 770.

Thus, Mr. Failes has not established each element required for municipal liability. Accordingly, this claim against Garfield County should be dismissed for failure to state a claim upon which relief may be granted.

b. Individual Liability

As to the personal involvement of Sheriff Niles, Mr. Failes has alleged no facts to establish the Sheriff's direct participation in this alleged delay. As noted, Mr. Failes states that he "filed grievances [on] September 28, 2013[,] and October 2, 2013, against [GCDF] for failing to provide medication for hypertension." Second Am. Compl. at 5, ¶ 17. However, he does not state to whom these grievances were submitted. Further, the

responses to the grievances are signed by "V. Gay." Second Am. Compl. Ex. 1 at 1-2. These facts do not implicate Sheriff Niles and, thus, do not suggest that he directly participated in this alleged violation of Mr. Failes' federal rights.

Again, however, the Sheriff's personal involvement may be established if Mr. Failes instead alleges facts to establish the Sheriff's personal involvement through his promulgation, creation, implementation, or responsibility for the continuation of a policy. *See Pahls*, 718 F.3d at 1225. Mr. Failes identifies no such policy. However, assuming the procedure for obtaining new prescription medications from "the DOC pharmacy" could be a policy of Sheriff Niles as supervisor, Mr. Failes would still need to establish, among other things, that Sheriff Niles' policy caused a violation of Mr. Failes' federal rights, which, again, would require Mr. Failes to first allege facts to establish that a subordinate under the Sheriff's supervision violated Mr. Failes' federal rights. However, Mr. Failes includes no specific information on any such subordinate's conduct, and, as noted above, does not allege the requisite substantial harm for an Eighth Amendment violation to result from a delay in care.

Thus, Mr. Failes has not alleged sufficient facts to establish Sheriff Niles' individual liability personally or as a supervisor. Accordingly, this claim against Sheriff Niles should be dismissed for failure to state a claim upon which relief may be granted.

### D. Opportunity to Amend

At this point the undersigned has recommended, because of the cited factual deficiencies, that all claims in Mr. Failes' Second Amended Complaint be dismissed for failure to state a claim upon which relief may be granted. Mr. Failes has made three

attempts to set forth factual allegations that would support a claim against the Board of County Commissioners of Garfield County and Sheriff Jerry Niles, including following a Report and Recommendation that discussed factual deficiencies in his first two complaints. Finding that further amendment is not reasonably likely to result in a viable claim being stated against these particular defendants, the undersigned recommends that the Second Amended Complaint be dismissed with prejudice to refiling. *See, e.g.*, *Curley v. Perry*, 246 F.3d 1278 (10th Cir. 2001); *Hornsby v. Jones*, 188 F. App'x 684 (10th Cir. 2006).

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Second Amended Complaint (Doc. No. 39) be dismissed, with prejudice to refiling, for failure to state a claim upon which relief may be granted and that the Court decline to exercise supplemental jurisdiction over any state-law claims.

## NOTICE OF RIGHT TO OBJECT

Plaintiff is advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by May 7, 2014, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Plaintiff is further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation terminates the referral in the present case.

ENTERED this 17th day of April, 2014.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE